IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN FLANAGAN, | : |
| Plaintiff, | : |
| v. | : Case No. |
| PIERRE LE MAHN, MENAKA GOPINATH, and PROJECT MANAGEMENT INSTITUTE, | : JURY TRIAL DEMANDED |
| Defendants. | : |

## COMPLAINT

Plaintiff, Karen Flanagan, by and through her undersigned counsel, brings this Complaint against her former employer, Project Management Institute ("PMI"), Pierre Le Mahn, and Menaka Gopinath, for violation of her rights under the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"),

### Parties

1.      Ms. Flanagan is an adult woman whose date of birth is January 20, 1972.

2.      At the time she was subjected to the discrimination averred in this Complaint, Ms. Flanagan resided and worked within this District in Newtown Square, Pennsylvania.

3.      Defendant, Pierre Le Mahn, is an adult person employed by PMI as its Chief Executive Officer who engages in business activities throughout the United States and other places in the world, including in Pennsylvania, with an address of 18 Campus Blvd., Newtown Square, PA 19073

4.      Defendant, Menaka Gopinath, is an adult person employed by PMI as its Chief Marketing Officer who engages in business activities throughout the United States and other

places in the world, including in Pennsylvania with an address of 18 Campus Blvd., Newtown Square, PA 19073

5. Defendant, Project Management Institute ("PMI") holds itself out as a not-for-profit business entity that engages in business activities throughout the United States and other places in the world, including in Pennsylvania with an address of 18 Campus Blvd., Newtown Square, PA 19073.

6. PMI is engaged in interstate commerce or in any industry or activity affecting interstate commerce and employed 20 or more employees for each working day during each of 20 or more calendar workweeks in each year from at least 2014 through the present, including in Pennsylvania.

## Jurisdiction

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 in that this civil action arises under the laws of the United States, specifically the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA").

8. This Court has supplemental jurisdiction over Plaintiff's claim under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"), pursuant to 28 U.S.C. §1367.

## Factual Background

9. Ms. Flanagan began her employment with PMI in May 2014.

10. She was fired from PMI in February 2024 when she was 52 years old.

11. At the time she was fired, Flanagan held the position of Director External Communications & Public Relations in which she reported directly to Defendant Menaka Gopinath, who, in turn, reported to Defendant, Pierre Le Mahn.

12. At the time she was fired and at all other times during which she was employed by PMI, Flanagan was qualified for the position she held.

13. Flanagan was fired from PMI without any prior warning that her job was at risk or that her job performance was not satisfactory.

14. Flanagan was fired from PMI without prior notice or warning after almost 10 years of successful service to PMI.

15. At the time Flanagan was fired, Defendant Gopinath and PMI Human Resources representative, Elena Suaste, told Flanagan that she was being fired because (1) one or multiple employees complained about her and (2) because PMI experienced a "significant financial loss" due to Flanagan's handling of Ketchum which was an outside vendor of PMI.

16. The alleged reasons articulated by PMI for firing Flanagan were exclusively those set forth in paragraph 15 of this Complaint.

17. PMI did not give any other reasons to Flanagan for firing her other than those set forth in paragraph 15 of this Complaint.

18. Flanagan started with PMI as Manager, Public Relations when the department consisted of her, a Public Relations Specialist, a Social Media Specialist and a Social Media Coordinator.

19. As of June 2023, she had climbed to Director of Communications overseeing approximately 20 people with approximately 8 direct reports.

20. Under Flanagan's leadership, the department had grown over the years to include Internal Communications, Public Relations, Regional Communications and Executive Communications.

21. In the 2020/2021 timeframe, Flanagan personally and closely assisted in developing a regional team as PMI shifted to a regional operating model.

22. She was intertwined in the process of hiring Regional Comms Leads -- EMEA, MENA, South Asia and Asia Pac, Latam, and Africa.

23. Flanagan won the PMI Platinum award in 2016 when President Obama signed the Project Management Improvement Accountability Act (PMIAA) into law.

24. Over the years, Flanagan's merit pay increases at PMI often exceeded the recommended percentages.

25. Flanagan always received positive performance reviews and maintained highly favorable rapport with CEOs and other managers throughout her tenure.

26. In March 2023, Chief of Staff, Lenka Pincot, included Flanagan on a LinkedIn post on International Womens Day for gratitude for women with whom she worked.

27. In September 2023, Flanagan was in Kenya for almost 10 days at the personal invitation of PMI's Africa Regional Managing Director who persistently commended Karen's performance.

28. On November 11, 2023, Flanagan received an email from Defendant Gopinath that said "great placement," in connection with a major Forbes placement.

29. In December 13, 2023, Flanagan approached Gopinath at a meeting regarding 2024 and Public Relations and Gopinath complimented Flanagan stating to her, "what's good is you have the experience to get us there."

30. In January 2024, Flanagan showed Gopinath her 2024 plan, that Flanagan had revised after getting her feedback, and was told "no changes." Gopinath shook her head in agreement with the plan and made comments that the plan was sound and made sense.

4

31. Flanagan started sending Gopinath weekly recaps in January 2024 and never received any indication whatsoever in response indicating that Flanagan's performance was lacking in any way, shape or form.

32. On the day Flanagan's employment with PMI was terminated in February 2024, Flanagan met with Gopinath and PMI's Global Human Resources and Talent Leader, Elena Suaste.

33. In that termination meeting, Gopinath and Suaste told Flanagan that she was fired effective immediately.

34. Gopinath and Suaste articulated two alleged reasons for Flanagan's employment termination in the termination meeting: (1) that PMI had a significant financial loss in connection with one of its public relations and marketing vendors, Ketchum; and (2) there were "multiple" complaints about Flanagan from other employees.

35. The two articulated alleged reasons for Flanagan's termination stated to her by Gopinath and Suaste in the termination meeting set forth in paragraph 36 of this Complaint were the only reasons given to Flanagan for her employment termination.

36. Throughout her employment with PMI, Flanagan never received any notice or warning that her job performance was unsatisfactory in any way, shape or form, much less that she was at risk of being fired because of it.

37. Prior to the termination meeting, no one from PMI or anywhere else told Flanagan that any other PMI employee complained about her to Human Resources, Gopinath or any other manager or executive.

38. Prior to the termination meeting, no one from PMI or anywhere else told Flanagan that PMI had a significant financial loss in connection with Ketchum, much less that Flanagan was responsible for it.

39. The reasons articulated by the Defendants for Flanagan's employment termination are false.

40. To this day, Defendants have never disclosed to Flanagan the identities of any PMI employee who allegedly complained about Flanagan.

41. To this day, Defendants have never disclosed to Flanagan the substance of any alleged complaint about her by any other PMI employee.

42. Numerous complaints have been made by PMI employees about Defendant, Pierre Le Mahn.

43. Le Mahn has not been fired for any of the complaints made PMI employees about him.

44. Several of Flanagan's direct reports when she was employed by PMI commended Flanagan.

45. For example, in annual reviews for Usman Aly, Heather Astbury, Devika Puri and Celine Nehme, in the question that asks "What can your manager do better," these individuals commended Flanagan as their manager.

46. Senior Marketing Consultant, Emily Bavaro, witnessed the profuse appreciation of Flanagan on the part of other employees.

47. In contrast to Flanagan, on January 19, 2024, a Glassdoor review by a PMI Marketing Specialist stated that Gopinath is a bully.

48. The review was critical of Gopinath for people being afraid to speak, directors being frightened, the work environment she created being "toxic," and that "When we try to get help from CMO she just tells us to figure it out on our own."

49. In sharp contrast to Gopinath and Le Mahn, who remain employed by PMI, Flanagan was never subjected to complaints about her from subordinates, colleagues, superiors or anyone else.

50. Moreover, it is inconceivable complaints about Karen would have resulted in her termination without prior warning or counseling.

51. Other PMI employees have had multiple complaints made by other PMI employees about them and yet they remain employed by PMI.

52. In fact, other PMI employees complained publicly about other PMI employees, including but not limited to Defendant Le Mahn and Defendant Gopinath, and yet they remain employed by PMI.

53. During her employment with PMI, Flanagan was a Director under a Vice President, which Vice President was responsible for the relationship with Ketchum, not Flanagan.

54. Additionally, PMI's Finance Department, as well as its Procurement Department, were involved in all invoices and billings, including those for Ketchum.

55. As long as Flanagan was employed by PMI, PMI had robust and tenacious Finance and Procurement departments.

56. Ana Ajose, Vice President of Finance at PMI, told Flanagan multiple times that Flanagan was the best, most conscientious and diligent partner at managing finances with whom she worked at PMI.

57. In an email Flanagan sent to Gopinath on October 26, 2023, Flanagan shared the information she had gathered on Ketchum spending. Gopinath provided no response.

58. Moreover, throughout Flanagan's tenure with PMI, PMI's Chief Executive Officer personally approved the funding for Ketchum each and every quarter.

59. This included Defendant Le Mahn, who became President and CEO of PMI in September 2022 and remains in that position presently.

60. It is difficult to conceive of how PMI can pass the straight face test in asserting that Flanagan was responsible for mismanaging Ketchum funding and that this resulted in her employment termination.

61. PMI's articulated reasons for firing Flanagan after nearly 10 years of successful performance, without prior notice or warning, are a pretext for age discrimination.

62. Rachel Heintz, who is approximately 20 years younger than Flanagan, was assigned to replace Flanagan at PMI.

63. Ms. Heintz is not only substantially younger than Flanagan, but she is nowhere nearly as qualified as Flanagan is for the position.

## COUNT I

## AGE DISCRIMINATION UNDER THE ADEA AND PHRA

### (Against PMI)

64. The foregoing averments are incorporated by reference as if fully set forth herein.

65. PMI willfully discriminated against Flanagan because of her age in terminating her employment.

66. PMI's conduct constitutes a violation of the ADEA and PHRA.

67. Flanagan has suffered physical injury or illness as a result of the emotional distress she has sustained due to PMI's discriminatory conduct.

WHEREFORE, Ms. Flanagan prays for monetary and other relief relief under the ADEA and PHRA as may applicable in excess of $15,000,000.00, as follows as against PMI:

A. Reinstatement;

B. Front pay in lieu of reinstatement;

C. Backpay;

D. Liquidated damages;

E. Compensatory damages;

F. Punitive damages;

G. Imposition of appropriate civil penalties;

H. An award of prejudgment and post judgment interest;

I. An award of costs and attorneys' fees; and

J. All such other relief as the Court deems just and proper.

## COUNT II

## AGE DISCRIMINATION UNDER THE ADEA AND PHRA

### (Against Le Mahn and Go[inath)

68. The foregoing averments are incorporated by reference as if fully set forth herein.

69. Le Mahn and Gopinath are both "persons" and "employers" within the meaning of the ADEA.

70. Le Mahn personally engaged in, aided, abettted, incited, compelled, and/or coerced the unlawfully discriminatory employment termination of Flanagan on account of her age in violation of the ADEA and PHRA.

71. Gopinath personally engaged in, aided, abettted, incited, compelled, and/or coerced the unlawfully discriminatory employment termination of Flanagan on account of her age in violation of the ADEA and PHRA.

72. Flanagan has suffered emotional distress as a result of Le Mahn's and Gopinath's discriminatory conduct.

WHEREFORE, Ms. Flanagan prays for monetary and other relief under the ADEA and PHRA as may applicable in excess of $15,000,000.00, as follows as against Defendants Le Mahn and Gopinath, personally and jointly and severally:

A. Reinstatement;

B. Front pay in lieu of reinstatement;

C. Backpay;

D. Liquidated damages;

E. Compensatory damages;

F. Imposition of appropriate civil penalties;

G. Punitive damages;

H. An award of prejudgment and post judgment interest;

I.      An award of costs and attorneys' fees; and

j.      All such other relief as the Court deems just and proper.

                                      Respectfully submitted,

                                      /s/ Edward S. Mazurek
                                      Edward S. Mazurek (PA I.D. No. 50278)
                                      THE MAZUREK LAW FIRM, LLC
                                      25201 Cornerstone Drive
                                      Yardley, PA 19067
                                      267.243.3393
                                      emazurek@mazureklawfirm.com

                                      Attorney for Plaintiff,
                                      Karen Flanagan